IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

  Vs.                      No.  04-40154-01-SAC
                                   08-4056-SAC

PAUL PADILLA-RODRIGUEZ,

        Defendant.

MEMORANDUM AND ORDER

On September 9, 2008, the court filed its decision on the government's motion to enforce the plea agreement (Dk. 103) filed in response to the defendant's motion for relief (Dk. 101) pursuant to 28 U.S.C. § 2255.  (Dk. 105).  The court granted in part the government's motion, enforced the defendant's waiver of his collateral attack rights, and dismissed grounds two and three of the defendant's motion as a result.  *Id.* On the remaining ground of the defendant's motion, the court set time limits for the defendant to file his memorandum and any relevant materials permitted by Rule 7 of the Rules Governing Section 2255 and for the government to file its response.  *Id.*  Having received filings from both parties, the court is ready to rule.

**PROCEDURAL BACKGROUND**

Charged with a drug trafficking offense and an illegal reentry offense, the defendant pleaded guilty on October 4, 2005, to illegal reentry of a deported alien previously convicted of an aggravated felony in violation of 8 U.S.C. § 1326(a) and (b)(2).  The distributed presentence report ("PSR") recommended a guideline sentencing range of 70 to 87 months.  "Dissatisfied with the Guideline sentencing range recommended . . . and with the court's overruling of his objection to the PSR, the defendant" later moved to withdraw his guilty plea as he would "'rather go to trial.'"  (Dk. 75, p. 2 quoting Dk. 64).  The defendant filed the motion to withdraw his guilty plea after obtaining several continuances of his sentencing hearing.  The defendant argued in his motion that he did not knowingly enter his plea because he had not been informed that his prior drug trafficking conviction would have such a significant effect on his Guideline sentencing range. (Dk. 75, pp. 2-3, 8).

The defendant in a personal letter to the court alleged that his understanding at the time of his plea was his sentence would be 36 months.  As reflected, however, in his sworn petition to the court at the change of plea hearing, the defendant had "represented that he understood that his prior criminal record could affect his sentence, and that no one had

2

authority to make any promises, suggestions or predictions about the length of his sentence other than those reflected in the plea agreement." (Dk. 75, p. 8).  Notably, the defendant offered no challenge to the voluntariness of his plea based on any language problems or inability to understand the terms of the plea agreement.

In addressing the motion, the court found "that the defendant's plea was the product of a voluntary, knowing and intelligent waiver of his constitutional rights."  (Dk. 75, p. 10).  The court weighed all relevant factors on the record presented and denied the motion for "the defendant . . . failed to demonstrate a fair and just reason for withdrawing his plea" and "the defendant's dissatisfaction with the Guideline sentencing range as calculated in the PSR is not a fair and just reason."  (Dk. 75, p. 11).

In the same order, the court also denied the defense counsel's motion to withdraw.  Counsel represented that not only was the defendant disappointed with counsel's lack of success on the "double counting" objection to the prior conviction but the defendant refused to accept counsel's repeated explanations of the court's ruling.  (Dk. 75, p. 11).  The court denied the motion for these reasons:

> The motion to withdraw fails to show a total breakdown in
> communications.  At most, the defendant is disappointed with the

3

court's ruling on the double-counting issue and blames his attorney
for the undesirable ruling.  He refuses to accept the court's ruling as
final on this issue or even to listen to his counsel's explanation of
the court's ruling.  Defense counsel has fully presented the defendant's
position on this double counting issue, and this issue is adequately
preserved for appeal.  At sentencing, the defendant also will have the
opportunity to address the court.  The court is not convinced that a
severe and pervasive conflict exists between counsel and the
defendant or that counsel will be unable to communicate
meaningfully with his client despite the defendant's refusal to accept
the court's prior ruling and counsel's reasonable explanation of it.

(Dk. 75, p. 13).  On July 13, 2006, the court sentenced the defendant to 70

months' custody.

       The defendant appealed his conviction and sentence.  The

government moved to enforce the appeal waiver in the plea agreement.

The defendant "responded that the motion should be denied because he

did not knowingly and voluntarily waive his appellate rights and enforcing

the plea agreement would result in a miscarriage of justice."  (Dk. 98, p. 3).

The Tenth Circuit granted the government's motion and dismissed the

appeal.  The panel found that the defendant had not carried his burden of

proving he did not understand the waiver.  Instead, the record on appeal

sustained a finding that the "defendant's appeal waiver was knowingly and

voluntarily given."  *Id.* at 4-5.  The panel also found that the defendant had

not demonstrated any miscarriage of justice resulting from the waiver's

enforcement.  "[T]he sentence imposed by the district court complied with the terms of the plea agreement and with the understanding of the plea defendant expressed at the plea hearing."  *Id.* at 6.

**ARGUMENTS AND ANALYSIS**

The defendant's supplemental briefing on his remaining § 2255 claim consists of unverified allegations that his counsel misled him "by not taking into account the variety of circumstances faced by the defendant of the sentence imposed, knowing that the defendant could not understand the plea procedures without an interpreter."  (Dk. 106, p. 2).  More pointedly, the defendant accuses counsel of leading him to believe his sentence would be 36 to 48 months and that the defendant trusted his counsel because he "speaks little English."  (Dk. 106, p. 1).  The defendant alleges his plea was "not knowingly and voluntarily due to attorney not providing an interpreter to translate for defendant so he would understand the plea he was signing."  *Id.* at 2.  The defendant generally accuses his counsel of "ignorance of sentencing guidelines in guilty plea context" and claims the prejudice of a longer sentence.  *Id.* at 3.  "Knowing that the defendant did not understand English, and defense counsel's failure to have an interpreter during the stage of the plea agreement, violated

5

defendant's Sixth Amendment right to effective assistance of counsel." *Id.*
at 4.  As evidenced by these quotations, the defendant's supplemental brief
fails to offer specific allegations of what the defendant did not know or
understand at the time of his change of plea hearing which rendered his
plea involuntary and/or unknowing.

In response, the government points out that the court had
asked for additional briefing to address the possible *Cockerham* exception
recognized in the prior order on these terms:  "Even though the defendant
does not allege with any specificity what he did not understand in the plea
agreement or how the lack of a translator rendered his plea involuntary, the
court cannot say at this time that the defendant's claim does not relate to
the validity of the plea."  (Dk. 111, p. 3 quoting Dk. 105, p. 8).  The
government argues the defendant's motion fails to come within the
*Cockerham* exception because of the following averments from his former
counsel:

> That during the period of time I was Mr. Paul Padilla-
> Rodriguez's attorney, I met with him on numerous occasions.  That
> during those meetings we always spoke in Spanish.
> Upon Mr. Padilla-Rodriguez deciding to plea guilty, I presented
> to him the plea agreement and plea petition.  That I read both
> documents to Mr. Padilla-Rodriguez in Spanish and explained both
> documents in Spanish.  I would read a portion of the document, and
> then I would pause to explain to Mr. Padilla-Rodriguez what I had just

6

read.  This is a practice that I have developed through the years due
to the different levels of education my clients' possess.  I have a
degree in Spanish and I also am native speaker; thus, I know that I
am competent to rend a translation of a document from English to
Spanish.

(Dk. 111-2, p. 1).  In light of this affidavit, the government asks the court to

find there is no factual basis for the defendant's claim that he did not

understand the plea agreement because of defense counsel's failure to use

an interpreter in discussing it in advance of the change of plea hearing.

The government concludes the waiver is enforceable as there is no basis

for applying the *Cockerham* exception.

The defendant's supplemental brief fails to come forward with

any specific allegations and averments of what he did not understand or of

how he was misled such that his plea was not knowing and voluntary.  The

court gave the defendant this supplemental opportunity to file a

memorandum replete with specific allegations and relevant materials.  (Dk.

105, pp. 8-9).  Nonetheless, the defendant offers no more than conclusory

allegations of being "misled," of not understanding "the plea he was

signing" or the plea procedures, and of his counsel giving erroneous advice

on the sentencing guidelines.  He makes no attempt at specifying which

terms of the plea agreement he did not understand because his counsel

failed to explain them before the change of plea hearing and the court failed to address them during the hearing.

The defendant already tried on direct appeal to argue that his waiver of appellate rights was not knowingly and voluntarily made because he did not understand the English language. The Tenth Circuit found the defendant had not met his burden of coming forward with evidence of record to show he did not understand the waiver. (Dk. 98, p. 4). The Tenth Circuit further observed:

> The transcripts of the defendant's Rule 11 plea colloquy demonstrate that he was given an interpreter at the start of the Rule 11 plea colloquy, and that the entire colloquy and plea hearing proceedings were translated to and for him. The defendant stated that he had a ninth-grade education. At no time did he indicate that he had any difficulty understanding the charges against him, the plea agreement, the appeal waiver, or any aspect of the plea colloquy, and he offers no evidence now that the interpreter was inadequate or insufficient. At the plea colloquy, the court summarized the plea agreement, and informed him of the constitutional rights he was waiving, including the right to appeal. Defendant represented to the court that he had reviewed the written plea agreement, which he signed, with his attorney, that he was entering into the plea agreement of his own free will, that he had a full opportunity to discuss with his attorney the constitutional rights he was waiving, including his right to appeal, and that he was satisfied with his attorney's representation. "[S]tatements made in a plea colloquy are presumed to be true." *United States v. Edgar*, 348 F.3d 867, 873 (10th Cir. 2003). On these facts, we find that defendant's appeal waiver was knowingly and voluntarily given.

*United States v. Padilla-Rodriguez*, 216 Fed. Appx. 818, 820 (10th Cir.

2007).  As outlined above, the plea colloquy specifically elicited from the defendant that he had reviewed the written plea agreement with his attorney.  At no point did the defendant indicate that he did not understand the plea agreement or that he had difficulty communicating with his counsel with or without an interpreter.  Such silence is particularly significant here, because at beginning of the hearing, the defendant through his counsel said he had not received a copy of the indictment and the court delayed the proceeding while counsel and the interpreter reviewed the indictment with the defendant.  When later asked if he wanted it read to him again in open court, the defendant declined and said that "[t]he attorney that's representing me already read it to me."  (Dk. 89 p. 5).

At the hearing, the significant terms of the plea agreement also were summarized for the defendant, and he told the court that he understood them and that no one had "made any other or different promises to you in regard to your plea of guilty other than set forth in the plea agreement."  (Dk. 89, pp. 7-8).   The court read from the plea agreement the maximum sentence for count one, and the interpreter read along with the court.  The defendant said he followed the interpreter and understood what the court had read.  (Dk. 89, p. 15).  With regard to the

9

sentencing guidelines, the defendant acknowledged that his counsel had discussed them with him.  He indicated understanding that the guideline range would depend upon the PSR to be issued later and upon the court's rulings on any objections to the PSR or suggestions from the parties.  *Id.* at 15-16.  The defendant said he understood the court had the right to impose a sentence lesser or greater than recommended by the guidelines.  Finally, the defendant answered, "no," when asked whether anyone had "predicted or promised with certainty" what his sentence would be.  *Id.* at 16.  The defendant took an oath at the beginning of the hearing, and his direct answers and declarations in court "carry a strong presumption of verity" which he has not rebutted.  *Lasiter v. Thomas*, 89 F.3d 699, 702 (10th Cir. 1996), *cert. denied*, 519 U.S. 998 (1996).

The defendant has not articulated nor demonstrated from the record what he did not understand about the plea agreement that allegedly rendered his plea involuntary and unknowing.  The burden rests squarely with the defendant to show it was not knowing and voluntary.  *United States v. Smith*, 500 F.3d 1206, 1210 (10th Cir. 2007).  The terms of the plea agreement plainly addressed all material terms, and the plea colloquy adequately covered those terms.  The transcript of the change of plea

hearing shows the defendant plainly understood the proceedings and was satisfied with the representation of his counsel.  As for any guideline estimates, a "miscalculation or erroneous sentence estimation by a defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel."  *United States v. Gordon*, 4 F.3d 1567, 1570-71 (10th Cir. 1993), *cert. denied*, 510 U.S. 1184 (1994); *accord United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005) ( "[S]tanding alone, an attorney's erroneous sentence estimate does not render a plea involuntary."), *cert. denied*, 547 U.S. 1164 (2006).  The court properly advised the defendant of his maximum sentence, and the defendant does not come forward with details or facts for his assertion that counsel misadvised him about the sentence.

        Not only has the defendant failed to articulate what he did not understand about the plea agreement as to render his plea involuntary, but he also has no proof of prejudice from his counsel's failure to have an interpreter present when the plea agreement was reviewed and discussed prior to the change of plea hearing.  Counsel's affidavit establishes the factually bankrupt nature of the defendant's allegation that a language problem prevented him from understanding the plea agreement and

11

proceeding.  The court witnessed in this case the defense counsel communicate in Spanish with the defendant with no apparent problems in understanding and with no apparent need for the interpreter.  The court finds no merit to the defendant's remaining claim of ineffective assistance of counsel in not having an interpreter present during discussions of the plea agreement.

IT IS THEREFORE ORDERED that the defendant's motions for relief (Dks. 101 and 106) pursuant to 28 U.S.C. § 2255 are denied.

Dated this 5th day of January, 2009, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge